## Rappleye *et al. v.* Hill *et al.*

It has been repeatedly held, that the act of 1837 requiring the drawers and endorsers of promissory notes, to be sued on the same action, does not affect the rights of the parties to the contract, but only modifies the remedy.

When there was a plea by one of three defendants, and a verdict in favor of plaintiffs and judgment by the court against all the defendants generally, without a formal entry of judgment by default against those who had not pleaded, held that the judgment was regular.

IN Error from the Circuit Court of the county of Warren.

This was an action of *assumpsit* by the plaintiffs against Nicholas H. Rappleye, Thomas M. Green and Edwin G. Cook, on a promissory note for the sum of $5,333. The action was brought in pursuance of the statute of 1837, approved May 15th, against Rappleye as maker, and Green and Cook as endorsers. The note was dated May 6, 1837.

Cook appeared by attorney and filed his plea to the action. The other defendants did not appear, but made default. No judgment by default was formally entered upon the record against Rappleye and Green. There was a verdict in these words, "we, the jury, find for the plaintiffs, and assess their damages, &c." The judgment was as follows, "therefore it is considered by the court that the plaintiffs recover of said defendants, $5,495 80, for their damages, &c. and also costs of suit."

The first error assigned is, that the drawers and endorsers were joined in an action on a note made prior to the law of 1837, in relation to suits on promissory notes. 2d. That the judgment is not authorised by the verdict and the facts in the record.

Guion and Smeed for plaintiffs in error.

It cannot be subjected to the operation of the statute. It is not necessary for our purpose to raise the question of the constitutionality of this law. It is sufficient for our purpose to show that its terms do not reach the note sued on. The principle is well settled

that remedial acts of the legislature do not operate retrospectively, without express words to that effect or a plain declaration of the intention of the legislature.   Commonwealth *v.* Hewitt, 2 H. and M. 181; and also Craig *v.* Craig, 1 Call. 483.   Dash *v.* Van Kleek, 7 Johnson's Rep. 477.   In Elliot *v.* Lynd, 3 Call. 279, the court says "men in regulating their contracts shall have the benefit of existing laws and not have them overturned or affected by future laws, which they certainly could not foresee or provide against." And see also page 282 of the same case.

The same principle *is* recognised in the People *v.* Tibbit, 4th Cowen, 384, and though it lays down the rule that a statute which alters the form of the remedy merely, may be retro-active, it cannot injure the position taken by the plaintiffs in error, for not only the form, but the nature of the remedy and the very forum itself are all changed.   For previously to the passage of the act, the endorser could be sued alone, and in his own county ; and now by this law, he is deprived of both these rights, *as the plaintiff is* compelled to bring suit against all, and in the county of the maker, let the inconvenience, the difficulty and the expense be what they may.   In the language of the judge, in the case from 3d Call. above cited, "Retrospective laws are odious in their nature, and it ought never to be presumed that the legislature intended to pass them, where the words will admit of any other meaning."   It is hoped this court will express its opinion in relation to this law.

The second assignment of errors is perhaps embraced in the first.

In support of the fourth and the fifth assignments, the plaintiffs in error deem essential *only to refer to the following authorities,* to wit: Taylor's *v.* Huston, 2 H. and M. 161.   Wilkinson's Administrators, *v.* Bennett, 3 Munf. 314, and the authorities there cited.   Totty's Executors *v.* Donaldson, 4th Munford, 430.   Xerr *v.* Dixon, 2 Call. 379.   The same points have been directly decided in this court.   Noble, Appellant, *v.* Christmas, 2 Howard, 855, and also 17 Johns. Rep. 270.

It may not be amiss to observe, that the 3d section of the law in question, providing that the court shall receive the plea of *non assumpsit,* &c. and that in the 9th section that defendants shall not be allowed to sever in their pleas, does not apply to this case. For here, the drawer and endorser, two of the defendants, did not

[Rappleye *et al. v.* Hill *et al.*]

plead at all, and the second endorser who did plead, plead only for himself, and yet, the judgment of the court upon an issue presented by a single defendant, is joint against all. This is clearly error.

Holt, for defendants in error.

The substance of the objections urged by plaintiffs in error, is that there should have been a *formal judgment by default* entered against Rappleye and Green, and that a judgment against all the defendants, upon an issue tendered by one, without reciting the default of the others, is erroneous and should be reversed. There should be but one judgment upon a joint cause of action. And, it will not be denied, I presume, that it is competent for the court to include in such judgment as well the defendants who have made default, as those against whom there has been a verdict found. It is only insisted by plaintiffs in error, that in such case, the default as well as the finding of the jury must be recited. This would be more formal; but the judgment will be sustained, if the *default* of the parties is otherwise sufficiently apparent from the record. This default does not consist merely in the party's failing to answer or appear in court " when solemnly called ;" because his personal presence or oral response would be of no avail, but it consists in his failure to plead or demur to the cause of the action set out against him. This constitutes a default and entitles the plaintiff to his judgment. In this case Rappleye and Green were summoned more than twenty days before the meeting of the court; the case came on for trial; they neither filed plea or demurrer, nor did they in any manner enter their appearance. These facts are, in law, a *default* on their part, and they are made manifest from the record. Where, then, was there any error in entering up a judgment against them? A judgment is but a conclusion of law from facts found, or apparent from the pleadings: and when those facts are manifest, this court will never disturb the judgment, because the language in which it is couched, may be slightly inartificial, or variant from the *form* furnished by the books—especially when the statute under which this suit was prosecuted, declares that judgments entered under its provisions "shall not be reversed, annulled, or set aside, for want of form."

The form of a judgment by default, it is admitted, generally contains a recital, that " the defendant, although solemnly called, comes not," &c.   The " call" here referred to, is nothing but the summons of the party, through the process of the court.   It has, however, been interpreted *literally* by some courts, and under this construction, a practice has obtained to some extent, of actually *calling* the defendant audibly and clamorously in court, before a judgment by default is pronounced.   This is wholly unnecessary, as a party's failure to respond to such *audible call,* in no manner enters into the legal idea of a default.   Even this practice is falling into disuse, and nothing is more common than to see a whole docket disposed of, without a single defaulting defendant being actually called at the bar of the court.

I have considered this judgment as against *all the defendants.* The counsel of plaintiffs in error, so treated it in his brief first filed, but in his " reply" there is perceptible a disposition to shift his ground.   He contends that it must be regarded as a judgment *based upon the verdict alone.*   If so, it could only be against Cook, because against him only the verdict was found.   The language of the judgment does not sustain the construction insisted on by plaintiffs in error.   It is, " that the plaintiffs recover of *said defendants," &c.*—evidently referring to all the defendants who had been previously named in the record.   Had the court intended a judgment upon the verdict only, against Cook, the word, *defendant,* not defendants, would unquestionably have been employed.   The inference is inevitable that the judgment was designed to be against all the defendants—based upon the verdict as to Cook, and upon the default, or failure to plead or demur, as to Rappleye and Green.

The statute of Jeofails, declares, that "*no* judgment after a verdict of twelve men shall be stayed or reversed *for any informality in entering up the judgment by the clerk.*"   The informality complained of, is obviously of this character.   Our statute of Jeofails, is a literal copy from that of Virginia, in which state it has been decided that " if errors in the pleadings and proceedings are cured by the statute of Jeofails *as to one defendant, they are cured as to all defendants.*"   2 Randolph, 446.   The verdict against Cook, cures all error and irregularities, so far as he is concerned.

[Rappleye *et al. v.* Hill *et al.*]

According to this decision, they are equally cured as to Green and Rappleye.

The position assumed by plaintiffs in error, that the judgment should have been *several* instead of *joint*, finds no countenance either in the statute of 1837, or in the practice which has prevailed under it. The liability of the party is joint, though consecutive; and if the framers of the law had intended that a *separate judgment* should have been pronounced against each, why require the clerk to endorse upon the execution, the relation in which the defendants stood to each other on the bill or note, on which the judgment was obtained? The object of this requisition was to furnish information to the sheriff, as to the order in which the defendants were to be held liable under the execution. Yet such information would be found in the body of the judgments, if entered up as contended for by counsel.

In Kentucky, where a joint action is authorised against the personal representatives, heirs and devisees of a deceased obligor, a joint judgment is uniformly entered, and it has been held that "the judgment need not state that it is to be levied, first, on assets in the hands of the executor; secondly, of assets descended, and lastly, of property devised. The sheriff must at his peril take notice of the law." 2 Bibb, 391. So in a joint judgment under the statute of 1837, the sheriff must at his peril levy the execution upon the parties, in the order in which they are made responsible; and to enable him to do so, the endorsement of the clerk upon the execution, is furnished him as a guide.

The 7th assignment of error is not supported by the record, and there being no calculation exhibited as required by the rules of this court, it will not be further noticed.

Guion, in reply.

In the record appears the declaration, the plea of one of the defendants, Edwin G. Cook, the empannelling of the jury, and their verdict, and then the judgment, and only judgment of the court. *Therefore* it is considered, &c. The judgment of the court was clearly upon the verdict of the jury, and could therefore only apply to the issue before the jury. We do not assign for error

any informality either in the verdict or judgment, (although in the latter, even though the issue had been full for all the defendants, there would be error; since the judgment is *joint,* where it ought to be *separate,* in order to indicate the character of the parties sued, whether drawer, endorser, &c.)   But we say that as to the maker and first endorser of the note, there is clearly *no judgment* in the record.   There is no judgment by default, there is no interlocutory judgment and writ of enquiry.   Can execution then issue where there is no judgment?   Can this court say that it is not error to issue an execution where judgment has not been legally obtained?

A judgment must be predicated in all cases, upon a default of the party against whom it is given, or upon the finding of the jury, upon issue properly joined.   The defendants, Green and Rappleye did not plead.   The jury therefore could not find against them, because there was no issue to be presented to a jury.   There is no judgment by default, nor does it appear that they made default.   They were not called, the cause was not tried as to them. It was submitted to the jury as to Cook, the jury found for the plaintiffs, and the court gave judgment.   That judgment cannot prejudice or affect Rappleye & Green, when they were no parties to the issue upon which it is predicated.   An inspection of the record will exhibit all these facts.

The case in 17 Johnson, 270, is full and expressly in point. The 3d section of the law of 1837, under which this suit is brought does not affect the present case.   If the suit had been upon a joint note, and one of the defendants only had plead, and the court had given judgment upon the verdict of the jury against all, the same error would have existed.   It is not the want of *form* we complain of, it is the utter absence of a legal judgment that is assigned for error.

The definitions of error cited by defendants in error, to wit:— "Some violations of law which might prove injurious to a party against whom it could operate," can apply to no case more forcibly than to the present. Surely the violation of law complained of in this case, operates with great severity against the defendants below, vide 2 Howard, 870, where the principle contended for in

this case is recognised to be law.   Vide also Walker's Rep. 86, Hendrick's Administrators *v.* Snodgrass.   Walker's Rep. 107, Horn *v.* Gillock.

Mr. Justice TROTTER delivered the opinion of the court.

This is an action of assumpsit, on a promissory note.   The declaration is in the usual form against H. N. Rappleye, as the maker, and the other plaintiffs in error as the endorsers.   The writ was duly executed upon all the defendants below.   Edwin G. Cook, one of the plaintiffs in error, filed the plea of non assumpsit, on which issue was joined.   The cause was submitted to the jury to try the issue thus made, who returned a verdict for the defendants in error.   The other defendants below made default.   There is a judgment against all the defendants in the circuit court.   There is no entry of the default which was made by Rappleye and Green.

Several objections to the judgment have been made, but it is not deemed necessary to notice any except the following : 1. It is insisted that the act of 1837, which requires the makers or drawers, as well as the endorsers of promissory notes and bills of exchange, to be sued in a joint action, does not embrace this case, because the note was made prior to its passage.   2. That the judgment is not authorised by the verdict or the other facts in the record.

It has been repeatedly decided by this court, that the act in question did not affect the rights of the parties to the contract, but simply modified the remedy as it existed before.   It was designed to prevent the evil which had been but too sensibly experienced, of a multiplicity of actions to recover but one debt.   It neither enlarges nor abridges the right.   It simplifies the remedy only.   This being the case, it was competent for the Legislature to make it operate upon all cases falling within the reason of the rule, whether they had already risen or were to arise thereafter. But if it were otherwise, it is a conclusive answer to the objection here raised, that the act necessarily embraces the present suit, inasmuch as it has been instituted since its passage.   The section under which the present action was commenced is in the follow-

ing words: " In all actions founded upon bills of exchange and promissory notes, the plaintiff *shall be compelled* to sue the drawers and endorsers, living and resident in this state, in a joint action," &c.   It will thus be seen that the only effect of this law is to change the common law rule of pleading.   The operation of the new rule thus established cannot, without a palpable violation of established principles, be limited by the origin or date of the contract.   The statute acts upon the mode of enforcing the contract, and not upon the contract itself.   It lays down a rule of pleading for the future.   How can it be argued, then, that it falls within the reason of the objection which is with so great propriety taken to laws which by acting on the past transactions of men, deprive them of the rights acquired under the old law?   I see no reason for the argument of the plaintiffs in error, nor should I have dwelt upon it, if I had not deemed it respectful to the urgent request of the counsel, who have insisted upon it.

The second ground of objection is simply that there is no technical or formal entry of the default on record, of the two defendants who did not unite in the plea of Cook.   The judgment is joint against the three defendants, and follows directly upon the verdict against Cook.   It is assumed, that there was no issue on which the verdict against all the defendants can be predicated.— This may be true, and if the verdict was the only ground of the judgment which was rendered, it would be fatal.   But there was an issue for the jury, their verdict was a response to it, and sufficient to authorise the judgment against Cook.   Is there enough in the second to authorise a judgment against the others?   If the verdict were taken from the record, could the judgment against Green and Rappleye find ground on which to stand?   We think it could.   The writ of *capias* was served upon them more than twenty days before court.   They were bound to appear and answer the action within the time limited by the rules of the court.   They made no answer, entered no appearance.   The record shows these facts.   Are they not in default?   Is not such the conclusion of the law?   And what is a judgment but the conclusion which the law makes from the facts contained in the

[Rappleye *et al. v.* Hill *et al.*]

record? It was more formal to have noticed the default in the record, and such is the usual practice. Yet we apprehend, that if the record contains the facts which constitute a default, it is, in contemplation of law, as good an authority for the judgment, as if the recital of it formally preceded the judgment. The cases which have been relied on by the counsel for the plaintiffs in error, in support of this objection, do not apply. We are satisfied that there is in the record in this cause sufficient matter to sustain the judgment.

Let the judgment be affirmed.